1  STEVEN MYHRE
   Acting United States Attorney
2  ROBERT A. KNIEF
   Assistant United States Attorney
3  District of Nevada
   501 Las Vegas Boulevard South, Suite 1100
4  Las Vegas, Nevada 89101
   PHONE: (702) 388-6336
5  robert.knief@usdoj.gov

6  Attorney for the United States

FILED

2017 AUG 17  PM 1:32

U.S. MAGISTRATE JUDGE

BY_____

7              UNITED STATES DISTRICT COURT
                  DISTRICT OF NEVADA
                        -oOo-

8  UNITED STATES OF AMERICA,          Magistrate No. : 2:17-mj-857-GWF

9            Plaintiff,               **CRIMINAL COMPLAINT**

10  vs.                               VIOLATION:

11  JOSE VEGA FELIX,                  21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846
                                      Conspiracy to Possess with Intent to
12           Defendant.               Distribute a Controlled Substance

13       BEFORE the United States Magistrate Judge, Las Vegas, Nevada, the

14  undersigned complainant, being duly sworn, deposes and states:

15                         **COUNT ONE**
        **(Conspiracy to Possess with Intent to Distribute a Controlled Substance)**

16       From on or about August 1, 2017, and continuing up to and including August 15,

17  2017, in the State and Federal District of Nevada,

18                      **JOSE VEGA FELIX,**

19  defendant herein, knowingly and intentionally combined, conspired, confederated and

20  agreed with other persons known and unknown to possess with intent to distribute a

21  mixture and substance containing a detectable amount of methamphetamine, a

22

1  Schedule II controlled substance, in violation of Title 21, United States Code, Sections

2  841(a)(1), (b)(1)(C), and 846.

3       Complainant, Jeremy Scott, as a Special Agent with the Drug

4  Enforcement Administration (DEA), states the following as and for probable cause:

5       1.    I am an "investigative or law enforcement officer of the United States"

6  within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer

7  of the United States who is empowered by law to conduct investigations of, and to

8  make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.  I

9  have been employed by the DEA as a Special Agent since January 2000.  I am

10  currently assigned to the Las Vegas, Nevada (NV), District Office.  In connection with

11  my DEA duties, I investigate criminal violations of the Controlled Substances Act.

12  Through the DEA, I have received specialized training in the enforcement of federal

13  narcotics laws.  My training and experience have involved, among other things: (1) the

14  debriefing of defendants, witnesses and informants, as well as others who have

15  knowledge of the distribution and transportation of controlled substances and of the

16  laundering and concealment of proceeds of drug trafficking; (2) surveillance; (3)

17  analysis of documentary and physical evidence; (4) the hand-to-hand purchase of

18  controlled substances; and (5) the execution of search warrants.

19       2.    The following information contained within this criminal complaint was

20  provided to me by other law enforcement personnel.  All times are approximate.

21  **FACTS ESTABLISHING PROBABLE CAUSE**

22       3.    For approximately two weeks prior to August 15, 2017, SA Scott had

23  received information from a DEA CS (CS) that he/she had a new associate that claimed

1  they could arrange for ten pounds of methamphetamine to be brought from the

2  Southern California area to Las Vegas for delivery to the CS.

3          4.      On August 15, 2017, at approximately 4:09 p.m., SA Scott received

4  information from the CS that the drugs had arrived in Las Vegas.  The CS relayed that

5  he/she was communicating with an unknown male at phone number 702-757-

6  5188.  The CS said that the drug trafficking organization (DTO) was willing to conduct

7  the transaction the following day but wanted to meet him and "interview" him in 20-25

8  minutes.  The interview was set to take place in the parking lot of a small strip mall

9  located just north of Lake Mead Blvd on the east side of Lamb Blvd.

10         5.      Members of the Las Vegas District Office (LVDO) Group 1 responded to

11 the area of the meeting and established surveillance at approximately 4:40 p.m.  SA

12 Scott saw that the CS had arrived at the meeting spot and was alone and appeared to

13 be waiting for the other party or parties to arrive.  This was confirmed via a phone

14 call.  During the phone call, the CS also relayed that the party should be arriving

15 shortly in a grey car.

16         6.      At approximately 4:47 p.m., GS Miles Aley saw a small grey Toyota arrive

17 and pull up next to the CS.  A Hispanic male, later identified as Jose VEGA FELIX, got

18 out of the car and greeted the CS.  They had a short conversation.  Then GS Aley saw

19 VEGA FELIX open the rear driver's side door of his car.  The CS then leaned into the

20 car and appeared to be looking at something in the rear of the car.  Both parties

21 conversed for a short time and then both parties left at approximately 4:53 p.m.  The

22 CS was followed by VEGA FELIX as they traveled south on Lamb Blvd.

23

7.      SA Scott received a phone call from the CS to tell him that VEGA FELIX had brought the ten pounds of methamphetamine to show to the CS.  The CS stated it was in two bags on the back seat of the car.  The CS had instructed VEGA FELIX to follow him to a nearby home where they could then exchange the money for the drugs. SA Scott relayed the information to members of Group 1 and made the decision to try to conduct a traffic stop on VEGA FELIX using a marked patrol unit.  A call was made to Las Vegas Metropolitan Police Department with the request to conduct a traffic stop on VEGA FELIX after finding a traffic violation.  The traffic stop was arranged by Task Force Officer Robert Grantham.

8.      At approximately 5:10 p.m., the traffic stop was made just south of Stewart on Hollywood in Las Vegas.  The stop was made by Officer J. Henry after he observed a stop sign violation.  Officer Henry approached the driver side door.  The window was already down.  Because of some dark tint on the vehicle and for officer safety, Officer Henry instructed the driver to roll down all the window of the vehicle so he could see inside and ensure there was nobody else in the rear compartment of the vehicle.

9.      As Officer Henry approached the driver, he could see inside the vehicle and in plain view in the back seat of the vehicle were two bags with multiple brown sandwich-style bags inside the larger bags.  A few of the bags were open and in plain view he could see inside the bag which contained a white crystal-like substance that was consistent with illegal narcotics.

10.     Officer Henry made contact with the driver of the vehicle.  Officer Henry immediately determined that the driver could not understand English well.  He asked

1  the driver to get out of the vehicle and patted him down for weapons and placed him in

2  hand restraints.  Officer J. Rosales then responded to assist with Spanish.  Officer

3  Rosales read the driver his Miranda rights at approximately 5:21 p.m. from a pre-

4  printed LVMPD card.  VEGA FELIX said "Yes" he did understand his rights.  Officer

5  Rosales asked VEGA FELIX what the items in the back seat of his car were.  VEGA

6  FELIX stated "crystal."  Officer Rosales asked VEGA FELIX what he was doing with

7  it.  VEGA FELIX stated that he sells the drugs to make money for his family.  Officer

8  Rosales asked where he gets the drugs.  VEGA FELIX stated he gets if from a friend

9  named "Chopo."  VEGA FELIX was also found to have $1,150.00 cash US currency in

10  his possession that was also seized.

11       11.     The suspected methamphetamine was seized and transported to the

12  Northeast Area Command station for processing.  Officer W. Ferguson tested the

13  substance with positive results for methamphetamine as witnessed by Officer J. Van

14  Dyke.  The total weight of the methamphetamine was 4680.4 grams.  The drugs were

15  then processed and booked as evidence per LVMPD policies and procedures.

16

17                                          _____

                                          JEREMY SCOTT, Special Agent

18                                          Drug Enforcement Administration

19

20  SUBSCRIBED and SWORN to before me
    this 17 day of August, 2017.

21

22  _____

    UNITED STATES MAGISTRATE JUDGE

23